```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

**SHANE E. RUBERT,**

    Plaintiff,

vs.                                              **Case No. 8:04-CV-813-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of**
**Social Security,**

    Defendant.

_____ /

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for a period of disability, Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 11).

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges an onset of disability on November 17, 2000 due back injuries stemming from an automobile accident with a semi-truck. (T 16) Thirty-four years old at the time of the hearing before the ALJ, Plaintiff has a GED and has completed vocational courses in computer-aided drafting. (T 229) Plaintiff has past relevant work experience as a forklift operator, assembly worker, machine operator, and laborer. (T 16) A hearing was held before

2

the ALJ on November 6, 2003. (T 228-258)

In the December 4, 2003 decision denying benefits, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and continued to meet the insured requirements of the Act through the date of the ALJ's decision. (T 22) The ALJ found that Plaintiff has the following severe impairments: "status post right hip fracture, hypertension, degenerative disc disease, chronic pain syndrome, and gastroesophageal reflux disease." (T 22) However, the ALJ found that Plaintiff's impairments did not meet or equal an impairment listed in the Listing of Impairments. (Id.)  The ALJ also found that Plaintiff's testimony regarding his limitations was not entirely credible. (Id.)  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a wide range of light exertional activity.[2] (T 23) In addition, the ALJ determined that Plaintiff's impairments prevented Plaintiff from performing his past relevant work. (Id.) Based on Plaintiff's age, education, transferrable skills, and RFC as well as Rule 202.20 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 table no. 1 ("the grids"), the ALJ determined that Plaintiff was not under a disability and was thus not entitled to disability

---

[2] Addressing Plaintiff's RFC, the ALJ found: "He can lift twenty pounds occasionally and ten pounds frequently.  He can sit/stand/walk six hours in a day as required for light work.  He can occasionally bend, squat, kneel, crawl, or crouch.  He should avoid overhead reaching." (T 23)

3

benefits. (Id.)

On February 27, 2004, the Appeals Council denied Plaintiff's request for review. (T 3-5) Accordingly, the Appeals Council allowed the ALJ's decision to stand.

Plaintiff argues that the Commissioner erred by (1) failing to evaluate properly Plaintiff's subjective complaints of pain; and (2) failing to call a Vocational Expert ("VE") at the administrative hearing. (Dkt. 8 at 6-12).

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

**A.** Plaintiff contends that the ALJ erred by failing to give proper weight to Plaintiff's statements about the severity of his pain (Dkt. 8 at 6).

The Eleventh Circuit's three part "pain standard" requires the Secretary to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition; and, (b) either (1) objective medical evidence confirming the severity of the pain resulting from the medical condition or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to cause the alleged pain. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). Under the alternate prong of the pain standard, subjective pain testimony which is

supported by clinical evidence of a condition which can reasonably be expected to produce the symptoms of which a plaintiff complains is itself sufficient to sustain a finding of disability. This prong requires the Commissioner to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). The reasons for rejecting pain testimony must be based on substantial evidence. See Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[3] An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005)(internal citations omitted).

During the administrative hearing, Plaintiff described being in a car accident in which his pick-up truck hit a semi-truck. (T 235) Plaintiff's right hip was injured, and Plaintiff underwent surgery the day after the accident. (Id.) Plaintiff also stated that, as a result of the accident, he has pain in his right hip,

---

[3] This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

5

right foot and lower back. (T 232-36) Specifically, Plaintiff experiences hip pain when he is sleeping on his right side. (T 236) Plaintiff also noted that his lower back pain radiated to his right foot causing numbness: "It just freezes up and starts to hurt, throbbing pain, stabbing pain. The pain goes down my right leg and burn[s] into my foot." (T 237)

Plaintiff has also had back surgery for a ruptured disc at L5/S1. (T 239) Plaintiff stated that the surgery did not improve his lower back pain. (Id.) To alleviate his back pain, Plaintiff takes prescription pain medication, has tried steroid injections, has undergone physical therapy (including a TENS unit), and uses hot showers and a heating pad. (T 238-242)

In the decision denying benefits, the ALJ extensively described Plaintiff's subjective complaints of pain, Plaintiff's history of medical treatment, and Plaintiff's statements concerning his daily activities. (T 17-20) In discrediting Plaintiff's subjective complaints, the ALJ stated:

> The claimant's complaints of pain have been carefully considered. It is well known that pain is a subjective symptom that is not measurable, and it is recognized that there are many disorders in which the common symptom is constant, unremitting pain which is not responsive to therapeutic measures. Pain can be an important factor in causing functional loss. However, it can constitute disability for Social Security purposes only if it not remediable, if it is of such degree as to preclude an individual from engaging in substantial gainful activity, and if it is associated with relevant abnormal findings. These factors are not of a significant degree as evidenced by this claimant's records. In this case, diagnostic testing failed to demonstrate totally

6

>    debilitating impairments. Physical examinations
>    indicated that the claimant was in no acute distress. On
>    several follow up visits, the claimant did not report any
>    pain.

(T 20)

The ALJ also noted, "In this case, the medical evidence does not document a continuing impairment of incapacitating proportions, i.e., one which would produce pain of such intensity that the ordinary physical activity to perform basic work-related functions would be impossible or contraindicated for a continuous period of twelve months or more." (T 21) Further, in determining that "the claimant's complaints of pain and incapacitation are not credible when viewed in light of the medical findings and the claimant's own testimony," the ALJ cited the reports of three physicians: Robert Martinez, M.D. ("Dr. Martinez"), Hamsaveni Kambam, M.D. ("Dr. Kambam"), and Keith R. Holden, M.D. ("Dr. Holden"). (Id.)

The ALJ cited Dr. Martinez's statement that Plaintiff was restricted to lifting twenty pounds occasionally and ten pounds frequently in discrediting Plaintiff's subjective complaints of pain. (Id.) Dr. Martinez, a neurologist, treated Plaintiff for pain from December 2000 through December 2001. (T 89-111) On December 11, 2000, Dr. Martinez evaluated Plaintiff and a rendered a "Complete History and Physical" of Plaintiff. (T 103-108) In his report, Dr. Martinez described Plaintiff's automobile accident, noted Plaintiff's subjective complaints of pain, and articulated several recommendations. (Id.) Noteworthy is Dr. Martinez's

7

recommendation that Plaintiff be limited to lifting twenty pounds "from a bent position" and be limited to lifting ten pounds frequently.[4] (T 107-108) The ALJ placed emphasis on this recommendation because it undercut Plaintiff's statements that he suffers from disabling pain.[5]

The ALJ also relied on the opinions of two state agency physicians: Drs. Kambam and Holden.  Dr. Kambam completed a RFC assessment of Plaintiff on September 13, 2002 in which Dr. Kambam indicated that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (T 112) Dr. Kambam also found that Plaintiff could stand and/or walk for about six hours in an eight-hour workday and could sit for the same amount of time. (Id.) Dr. Kambam also indicated that Plaintiff could push and/or pull on an unlimited basis. (Id.) Further, Dr. Kambam determined that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl occasionally.  (T 113) The ALJ properly relied on the opinion of this state agency physician because there were no conflicting

---

[4] The record contains several reports authored by Dr. Martinez which contain similar lifting restrictions. (T 90, 92, 95, 97, 99, 101)  Dr. Martinez also recommended that Plaintiff walk, swim, ride a stationary bike, and do rowing exercises. (T 92)

[5] The record also contains the results of Plaintiff's December 11, 2000 "Electromyography/Electroneurography Report" which examined Plaintiff's right lower extremity.  Dr. Martinez indicated that the result of the tests revealed that Plaintiff's extremity was "normal." (T 109) Dr. Martinez also stated that there was "no evidence of radiculopathy, neuropathy, or myopathy" and that there was no "evidence of denervation." (T 109-10)

8

decisions in the record.

In addition, the ALJ relied on the decision of Dr. Holden, who completed a physical RFC assessment of Plaintiff on November 7, 2002. (T 119-126) Similar to Dr. Kambam and Dr. Martinez, Dr. Holden determined that Plaintiff's lifting should be restricted to twenty pounds occasionally and ten pounds frequently. (T 120) Dr. Holden's findings were identical to those of Dr. Kambam with regard to Plaintiff's ability to function except that Dr. Holden included an additional note that Plaintiff should never climb ladders, ropes, or scaffolds. (T 121) In addition, Dr. Holden noted that Plaintiff's subjective complaints were not entirely credible because of Plaintiff's intact motor abilities, his gait, and his functional range of motion. (T 124)

In the decision denying benefits, the ALJ stated that he adopted the opinions of Drs. Martinez, Kambam, and Holden with regards to Plaintiff's abilities because there were no opinions in the records which refuted the opinions of the above-named physicians.

However, Plaintiff argues that the opinion of James K. Shea, M.D. ("Dr. Shea"), a pain management specialist, supports the argument that Plaintiff's pain is disabling. On July 7, 2003, Dr. Shea authored a follow-up note describing Plaintiff's complaints of low back pain which disrupted Plaintiff's sleep. (T 182) Further, Dr. Shea described Plaintiff's use of medication to treat pain.

(Id.) The note concluded with the statement: "He continues to be disabled."[6] (Id.) However, the opinion of a treating physician regarding a disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence. Bloodsworth, 703 F.2d at 1240. In this case, Dr. Shea's opinion that Plaintiff is disabled is conclusory and the ALJ did not err in failing to credit this report.

Dr. Shea authored several reports after seeing Plaintiff, but he failed to enumerate a single functional limitation or restriction caused by Plaintiff's impairments related to back pain. (T 182-192) Dr. Shea's "Initial Medical Evaluation" report provided a detailed account of Plaintiff's impairments and noted that Plaintiff did not appear to be in "acute distress." (T 183-186) Dr. Shea also remarked that Plaintiff's posture and gait were normal. (T 185) Further, on July 7, 2003, Dr. Shea noted that Plaintiff's medications were "working well for him" and Dr. Shea prescribed more pain medication on that date. (T 182)

In addition, in the decision denying benefits, the ALJ commented on several activities that Plaintiff engaged in such as getting his children off to school, caring for his infant daughter,

---

[6] The Eleventh Circuit has instructed that courts should be concerned with a physician's evaluations of a plaintiff and the consequences of such evaluations rather than the physician's "opinions of the legal consequences of [that] condition." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Thus, in the instant case, Plaintiff's reliance on Dr. Shea's statement regarding Plaintiff's disability is misplaced.

10

fishing with his school-aged sons, and cutting the grass. (T 20)

In summary, Plaintiff satisfied the requirement of producing evidence of an underlying medical condition: the ALJ determined that Plaintiff has the severe impairments of status post right hip fracture, degenerative disc disease, and chronic pain syndrome.[7] (T 22)  In addition, Plaintiff's impairments can reasonably be expected to cause pain.  However, the ALJ articulated several reasons for discrediting Plaintiff's subjective complaints.[8]

The ALJ acknowledged that Plaintiff experiences back pain but commented that Dr. Martinez determined that Plaintiff was able to lift with specified weight restrictions, and two state agency physicians found that Plaintiff could perform work with a lifting restriction. (T 21)  Further, the ALJ's opinion addresses the inconsistencies between Plaintiff's claims of disabling pain and Plaintiff's statements concerning the range of activities he is able to undertake, including fishing for several hours at a time,

---

[7] An MRI report dated August 29, 2003 also documents Plaintiff's disc degeneration: "At the L4/5 level, the disc is desiccated.  Postoperative changes are noted involving the posterior elements.  A posterior disc herniation is present, which is more prominent to the left of midline.  The herniated disc causes a small impression upon the left ventral aspect of the thecal sac and extends into the inferior aspects of the L4/l5 neutral foramina bilaterally." (T 188) The MRI also determined that Plaintiff has disc herniation at L5/S1 "which impinges upon the thecal sac." (T 189)

[8] As stated in Smallwood v. Schweiker, "[t]he law is well settled that an administrative law judge may properly challenge the credibility of a claimant who asserts he is disabled by subjective complaints." 681 F.2d 1349, 1351 (11th Cir. 1982).

11

cutting the grass, and taking care of his children. (T 20)

The evidence cited by the ALJ provided substantial evidence supporting the finding discrediting Plaintiff's complaints of disabling pain. See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (ALJ properly discredited a plaintiff's subjective complaints of pain when he specifically articulated at least three reasons for rejecting such testimony). Further, a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1560.

Accordingly, Plaintiff's argument on this issue is without merit.

**B.** Plaintiff also contends that the ALJ erred at step five of the sequential analysis by relying solely on the grids and failing to call a VE to testify during the administrative hearing.

The ALJ described the manner in which he applied the grids to the facts of Plaintiff's claim:

> The Medical Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion (as defined in Social Security Ruling 83-10) and there are no nonexertional limitations. When all of the criteria of a Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice. Because the evidence supports a finding that the claimant can perform the demands of a wide-range of light work, a finding of "not disabled" is reached within the framework [of] Medical-Vocational Rule 202.20.

(T 22)

Once the plaintiff has demonstrated that he cannot perform his past relevant work, the burden shifts to the Commissioner to establish that there are other jobs the plaintiff can perform. Allen, 880 F.2d at 1202.  The Eleventh Circuit has instructed that an ALJ may use the grids to determine whether jobs that the claimant is capable of performing exist in the national economy with the exception of two circumstances: (1) when the ALJ has stated that the claimant is unable to perform a full-range of work at a given level due to exertional limitations; or (2) "when a claimant has non-exertional impairments that significantly limit basic work skills"[9]  Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).

In the decision denying benefits, the ALJ determined that Plaintiff could perform a "wide range" of light work rather than a "full range" of light work and noted that Plaintiff should avoid overhead reaching. (T 21-22) Plaintiff submits that this RFC finding required the ALJ to elicit testimony from a vocational expert.

A "full range" of light work is different than a "wide range."

---

[9] Exertional limitations are those which affect a claimant's ability to sit, stand, walk, lift, carry, push, and pull. Phillips, 357 F.3d at 1242.  Non-exertional limitations affect a claimant's ability to work, and include mental limitations, pain limitations, and all physical limitations that are not included in the above list of exertional limitations.  Id; see also S.S.R. 96-4.

13

As stated in Marbury v. Sullivan, "it is only when the claimant can clearly do *unlimited* types of light work, that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." 957 F.2d 837, 839 (11thCir. 1992).[10] Plaintiff was found limited in his ability to perform light work by the restriction of avoiding overhead reaching. Therefore, consistent with Marbury, the ALJ was incorrect to exclusively rely upon the grids, as the testimony of a VE was required to "determine whether [Plaintiff's] limitations were severe enough to preclude him from performing a wide range of light work." Id. at 839.[11]

In addition, Plaintiff has alleged that pain, a non-exertional

---

[10] In Marbury, the ALJ made the finding that the plaintiff could perform a "wide range" of light work and therefore concluded that the testimony of a VE was not required. 957 F.2d at 839. The ALJ also noted in the decision denying benefits that the plaintiff was not able to work around unprotected heights and dangerous machinery due to the plaintiff's seizure disorder. Id. The ALJ also stated in the decision that the limitations regarding heights and machinery did not significantly compromise the plaintiff's basic work skills and were not severe enough to preclude the plaintiff from performing a wide range of light work. Id. The reviewing court determined that the testimony of a VE was required because, although the ALJ stated that the plaintiff was capable of performing a wide range of light work, "it is evident that the claimant was not able to do unlimited types of work because he was precluded from work around unprotected heights or dangerous machinery. Expert testimony was therefore required to determined whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work." Id.

[11] The Commissioner fails to cite Marbury in its memorandum of law; the other citations presented by the Commissioner on this issue are unpersuasive.

14

limitation, precludes employment. Though the ALJ did not fully credit Plaintiff's subjective complaints of pain and determined that Plaintiff's pain did not rise to the level of a disability, the ALJ did determine that "chronic pain syndrome" is one of Plaintiff's severe impairments. (T 22) Accordingly, the testimony of a VE should have been elicited during the administrative hearing.

Plaintiff has alleged a non-exertional impairment (pain) and the ALJ determined that Plaintiff could perform a "wide range" of light work rather than a "full range" of light work. Therefore, the rule in <u>Phillips</u> and <u>Marbury</u> among other cases applies, and the ALJ was required to call upon a VE to conclude the sequential analysis of Plaintiff's disability benefits application.

### **CONCLUSION**

While concluding that remand for further fact-finding is necessary due to errors of law at the administrative level, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party should have the opportunity to submit additional evidence.

Accordingly and upon consideration it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2) The Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand." <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302-03 (1993); <u>Newsome v. Shalala</u>, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida on this 27th  day of May 2005.

_____
ELIZABETH A JENKINS
United States Magistrate Judge